302                December 3, 2013                No. 38

IN THE OREGON TAX COURT
REGULAR DIVISION

Myrna AZAR,
*Plaintiff,*
*v.*

DEPARTMENT OF REVENUE
and Lincoln County,
*Defendants.*
(TC 5090)

Plaintiff (taxpayer) appealed her disqualification from and denial of application for the Senior Property Tax Deferral Program. Taxpayer argued that the subject property was her homestead for the purposes of the statutes applying to senior property tax deferral. Following trial, the court found that Defendants properly disqualified taxpayer from Senior Property Tax Deferral in January of 2009 and properly denied taxpayer's application for Senior Property Tax Deferral for the 2009-10 tax year, and that the subject property was not taxpayer's homestead during the timeframe under consideration in this case, and that taxpayer was not absent from the subject property "by reason of health," as that term is used in ORS 311.670(1) and ORS 311.684(3).

Trial was held February 27, 2013, in the courtroom of the Oregon Tax Court, Salem.

Carl R. Neil, Attorney at Law, Portland, argued the cause for Plaintiff (taxpayer).

James C. Wallace, Senior Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue (the department).

Decision for Defendant rendered December 3, 2013.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This case comes before the court for decision following a trial in the Regular Division. Plaintiff (taxpayer) appeals from a decision of the Magistrate Division holding that Defendant Department of Revenue (the department) properly disqualified real property owned by taxpayer from Senior Property Tax Deferral in January of 2009 and properly denied, in May of 2009, taxpayer's application for Senior Property Tax Deferral for the 2009-10 tax year.

## II.   FACTS

Taxpayer owns real property (the subject property) located in the city of Newport in Lincoln County. The subject property consists of a residential lot, a house, and an out-building formerly used as a store front. Taxpayer's parents had owned the subject property and had used it both as a private residence and a place of business. Taxpayer inherited the subject property in 1976, when her last surviving parent passed away.

The parties do not dispute that the subject property was taxpayer's primary residence as a child. Taxpayer began college in 1956, and between 1956 and roughly 1961 taxpayer split her time between living with her parents on the subject property and living on campus. In 1961 taxpayer married. Taxpayer and her husband first rented, and then purchased a house in Portland, though taxpayer still frequently spent weekends with her parents in Newport. Taxpayer had a son in 1967 and for a time in the early 1970s lived on campus with her son while pursuing a graduate degree at the University of Oregon in Eugene. After receiving her degree, both taxpayer and her son returned to Portland.

Taxpayer claims that her son suffers from agoraphobia and for much of his life has required her constant care. However, there is no evidence in the record that taxpayer's son has ever actually been diagnosed with agoraphobia.

Taxpayer and her husband divorced in 1986 and taxpayer's husband has since remarried. However, taxpayer and her son continued after the divorce to share a house with taxpayer's ex-husband. At the time of trial taxpayer and her son occupied a portion of this house that is separate from the portion used by taxpayer's ex-husband and his present wife. The testimony at trial was to the effect that taxpayer stayed at the subject property intermittently, primarily staying in a Mercedes-Benz camping van parked next to the house. Taxpayer's declarations suggest that she may have lived roughly half-time on the subject property starting in July of 2010 and running through at least early

September of 2010. However, taxpayer's testimony also indicated that at the time of the trial in this case she was not living on the subject property and would have to expend a significant amount of money to repair the structures on the property before resuming living on the subject property.

In 2007 taxpayer applied for and received deferral of property taxes under Oregon's Deferred Collection of Homestead Property Taxes program (also known as Senior Property Tax Deferral), as described in ORS 311.666 to 311.701.[1] Taxpayer withdrew from the program, but then re-applied in 2008 and received deferral for the 2008-09 tax year. In January 2009 the department received information to the effect that taxpayer was not living on the subject property. The department disqualified the subject property from Senior Property Tax Deferral and issued a disqualification notice on January 13, 2009. Consistent with ORS 311.684, the notice informed taxpayer that she now had to pay her previously deferred property taxes along with those owed for the 2009-10 tax year. Taxpayer then re-applied for Senior Property Tax Deferral for the 2009-10 tax year. The department denied this application in a notice dated May 20, 2009, on the ground that taxpayer was not living on the subject property.

Taxpayer filed her initial complaint in the Magistrate Division in April of 2009. Taxpayer filed an amended complaint in October of 2009, some time after the denial of her application for the 2009-10 tax year by the department. In the Magistrate Division taxpayer initially moved for summary judgment on the legal question of whether she was absent from the subject property "by reason of health." In an order dated July 6, 2011, the magistrate denied taxpayer's motion but also declined to rule as a matter of law that taxpayer was *not* absent "by reason of health." Following a trial on that issue the magistrate issued a decision finding that taxpayer had not satisfied the burden of showing that she was absent from the subject property "by reason of health." *See Azar v. Dept. of Rev.*, TC-MD 090639C (Mar 27, 2012) (slip op). Taxpayer appealed this decision to the Regular Division.

---

[1] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.

## III.   ISSUES

(1)   Was the subject property taxpayer's "homestead," for purposes of ORS 311.666(2)?

(2)    Was taxpayer absent from the subject property "by reason of health," as that term is used in ORS 311.670(1) and ORS 311.684(3)?

## IV.   ANALYSIS

The procedural history of this case before the Regular Division requires explanation because, from the pleadings and briefs submitted by the parties in this case, the parties do not appear to be fully in agreement as to what issues are properly before the court.

The department, in its pleadings, argues that the disqualification of the subject property is the only issue properly before the court and claims that taxpayer never timely appealed the denial of her application for the 2009-10 tax year.

Taxpayer has, on the other hand, drafted her pleadings and briefing before this division in most respects as if the only issue before the court is the denial of taxpayer's application for deferral for the 2009-10 tax year. However, taxpayer alleges that her position with regard to the subject property did not change over the course of the tax years 2007-08 through 2009-10 and makes this allegation the basis for her argument that her application for the 2009-10 tax year, filed in April of 2009, should not have been denied. If taxpayer's allegation is true, then the court cannot pass judgment on the department's denial of taxpayer's application for the 2009-10 tax year without at the same time passing judgment on the properness of the department's disqualification of the subject property in January of 2009.

The court has reviewed the complaint and the amended complaint filed by taxpayer in the Magistrate Division. In the opinion of the court, taxpayer's request for relief in her amended Magistrate Division complaint fairly embraces both the disqualification and the denial. The court also observes that the Magistrate Division ruled on both issues, first in the magistrate's order denying taxpayer's motion for summary judgment and again in the final decision of the magistrate.

The court draws from this that the magistrate deemed the denial of taxpayer's application properly before the Magistrate Division. If the department considered this not to be the case, then the time to object was during proceedings before the Magistrate Division. Because the magistrate ruled on both issues and taxpayer's Regular Division complaint at least implicitly embraces both the disqualification of the subject property and the denial of taxpayer's application for deferral for the 2009-10 tax year, the court rules that both the disqualification of taxpayer's property from Senior Property Tax Deferral in January of 2009 and the denial of taxpayer's application for deferral for the 2009-10 tax year are properly before the Regular Division of the court.

A.   *Introduction to Senior Property Tax Deferral*

New applicants for Senior Property Tax Deferral and existing enrollees must each satisfy the same criteria, so the legal analysis is the same for both issues. Senior Property Tax Deferral is limited to individuals who are either older than 62 years of age or suffering from certain severe physical disabilities, and allows enrollees to defer collection of property taxes only for property used as a "homestead," as that term is defined in ORS 311.666(2). ORS 311.668; ORS 311.670. In addition to the age or disability requirement and "homestead" requirement, the applicant's household income and net worth and the Real Market Value (RMV) of the property subject to deferral must also fall below threshold levels specified in the statute. *See* ORS 311.668(1). Property taxes are deferred, not forgiven; the deferred taxes come due, with accrued interest, when the property ceases to be eligible for deferral or when certain disqualifying events occur. ORS 311.684.

The parties appear to agree that: taxpayer meets the age requirement; that her income and net worth are within the thresholds permitted by the statutes; and that the RMV of the subject property does not exceed the threshold for deferral. The only questions in this case appear to be whether the subject property was taxpayer's "homestead" for purposes of ORS 311.666(2), and if not, whether taxpayer satisfies an exception to the homestead requirement

that allows qualified individuals to enroll or remain in the program if their absence from the property at issue arises "by reason of health."

B. *Whether the subject property was taxpayer's "homestead"*

Enrollment in Senior Property Tax Deferral is governed by ORS 311.670. That statute states, in pertinent part:

> "In order to qualify for tax deferral under ORS 311.666 to 311.701, the property must meet all of the following requirements when the claim is filed and thereafter so long as the payment of taxes by the taxpayer is deferred:
>
> "(1)  The property must be the homestead of the individual or individuals who file the claim for deferral, except for an individual required to be absent from the homestead by reason of health."

Disqualification from Senior Property Tax Deferral is governed by ORS 311.684. That statute similarly states, in pertinent part:

> "Subject to ORS 311.688, all deferred property taxes, including accrued interest, become payable as provided in ORS 311.686 when:
>
> "* * * * *
>
> "(3)  The tax-deferred property is no longer the homestead of the taxpayer who claimed the deferral, except in the case of a taxpayer required to be absent from such tax-deferred property by reason of health."

As the court understands taxpayer's pleadings and briefing, taxpayer argues that the subject property was her "homestead" in January of 2009 and during the 2009-10 tax year. ORS 311.666(2) defines "homestead" in this context as:

> "[T]he owner occupied principal dwelling, either real or personal property, owned by the taxpayer and the tax lot upon which it is located."

While the subject property was taxpayer's childhood home, the evidence in the record clearly supports the department's contention that the subject property was not taxpayer's homestead during the timeframe under consideration in

this case. Most notably, taxpayer's own declarations indicate that she did not move onto the subject property until roughly two months before the date of her declaration dated September 3, 2010. This was more than a year after the department denied taxpayer's application for deferral for the 2009-10 tax year.

The subject property was not taxpayer's primary residence in January of 2009, when the department disqualified the subject property from Senior Property Tax Deferral, or in May of 2009, when the department denied taxpayer's application for deferral for the 2009-10 tax year. The record before the court indicates that taxpayer was absent from the property, albeit with periodic visits, for many years before either event. The subject property was therefore not taxpayer's homestead at the time of either the disqualification or the denial of taxpayer's application for deferral for the 2009-10 tax year.

C.   *Whether taxpayer was absent from the subject property "by reason of health" for purposes of ORS 311.670(1) and ORS 311.684(3)*

Because the subject property was not taxpayer's homestead at any time under consideration in this case, the department's disqualification of the subject property from Senior Property Tax Deferral in January of 2009 and its subsequent denial of taxpayer's application for deferral for the 2009-10 tax year must be upheld unless taxpayer was absent from the subject property "by reason of health," as that term is used in ORS 311.684(3) and ORS 311.670(1).

Taxpayer and the department each offer different legal interpretations of the "by reason of health" exception. Taxpayer offers an interpretation that *might* support a conclusion that taxpayer was absent from the subject property "by reason of health," and the department offers an interpretation that clearly would not allow such a conclusion. Taxpayer argues that she was absent from the subject property "by reason of health" during the years leading up to and including the 2009-10 tax year because she was staying in Portland to care for her adult son. As mentioned above, taxpayer alleges that her son suffers from severe agoraphobia.

The department argues that as a legal matter the absence "by reason of health" exception to the homestead requirements of ORS 311.670(1) and ORS 311.684(3) refers exclusively to an absence by the person applying for, or seeking to maintain, deferral for reasons of that person's own health. In support of this argument the department points to legislative history detailing the circumstances resulting in the addition of the "by reason of health" exception to ORS 311.670(1). Taxpayer, in turn, argues that the text of the statute encompasses situations such as her own, where the person seeking to maintain or enroll in Senior Property Tax Deferral is absent for reasons relating to the health of a third person.

When interpreting statutory text, the court seeks to implement the intention of the legislature. ORS 174.020. To determine that intent, the court looks to the text of the relevant provision and its context in the overall statutory scheme. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The court may also consider legislative history to the extent the court considers it probative. *State v. Gaines*, 346 Or 160, 206 P3d 1042 (2009).

On review of the text and context of the "by reason of health" exceptions, and of the legislative history provided by the department, the court concludes that the department's interpretation of the statute is correct. In the opinion of the court, the choice between the position of the department and that of taxpayer hinges on the word "required." The "by reason of health" exception in ORS 311.684(3) applies only to "a taxpayer *required* to be absent from such tax-deferred property by reason of health." (Emphasis added.) Likewise, the "by reason of health exception in ORS 311.670(1) applies only to "an individual *required* to be absent from the homestead by reason of health." (Emphasis added.) The word "required" is susceptible to varying definitions, but in the case of the "by reason of health" exceptions the court finds that "required" means "[T]o demand as necessary or essential." *Webster's Third New International Dictionary* 1929 (unabridged ed 2002). That is to say that the absence cannot arise simply from preference or from convenience; it must be dictated by circumstances in such a way that to do otherwise would be

to risk serious consequences for the person subject to the requirement. In the context of an absence from property that is "required *** by reason of health," the court finds that such a "requirement" most naturally arises when that person's own health is at stake.

The legislative history provided by the department is illustrative here. The legislators and witnesses discussing the addition of the "by reason of health" exception to ORS 311.670(1) discussed numerous real and hypothetical cases where the exception may or may not be implicated. All of those cases involved individuals required to be absent from what would otherwise be their homestead because of the state of their own health. (*See* Def's Ex F-6.) The court considers the examples given in these discussions to mean that the legislature intended to limit the exception to persons absent from property that would otherwise be their homestead for reasons of their own health.

Taxpayer does not allege that she herself had any medical condition that required her to be absent from the subject property. Rather, she argues that she was "required" to live with her adult son in Portland because of his alleged mental disorder. The court appreciates that taxpayer likely performed many valuable services for her son, and that taxpayer's son may have derived substantial benefits from taxpayer's presence with him in Portland during the time frame under consideration in this case. However, for the purposes of the "by reason of health" exceptions in ORS 311.670(1) and ORS 311.684(3), taxpayer was not "required" to live in Portland "by reason of health." The department's disqualification of the subject property from Senior Property Tax Deferral and subsequent denial of taxpayer's application for deferral for the 2009-10 tax year were therefore proper.

D.   *Burden of Proof*

As a further matter, even if the court had adopted the interpretation of the "by reason of health" exceptions put forward by taxpayer, taxpayer has failed on the record before the court to satisfy the burden of proving that her absence from the subject property during the time frame under consideration in this case was as a result of her son's medical or

mental health needs. As the party seeking affirmative relief in this matter, taxpayer must prove the material facts of her case by a preponderance of the evidence. ORS 305.427. On the record before the court, even if the court had concluded that taxpayer correctly interpreted the "by reason of health" exceptions found in ORS 311.670(1) and ORS 311.684(3), taxpayer has failed to show that her absence from the subject property was more likely than not as a result of her son's medical or mental health.

Most importantly, while the court does not doubt the sincerity of taxpayer's belief in her son's mental illness, there is no competent evidence in the record showing that her son has ever been diagnosed with agoraphobia, or with any other medical or mental condition that would explain taxpayer's absence from the subject property. Taxpayer herself testified to the effect that her son suffered from agoraphobia, but taxpayer's testimony as a layperson cannot satisfy the burden of proof on this question. Taxpayer also attached to her pre-trial brief a letter from her own physician to the effect that taxpayer's son displayed symptoms consistent with agoraphobia, but taxpayer never offered the letter in evidence and taxpayer never sought to call her physician to testify as to the basis for her conclusion.

Therefore, even if the court had adopted taxpayer's interpretation of the "by reason of health" exception, taxpayer's case would have failed for a lack of evidence showing that her son more likely than not suffered from a condition that "required" taxpayer to be absent from the subject property to care for her son.

## V.  CONCLUSION

The court concludes that the subject property was not at any time taxpayer's "homestead," as that term is defined by ORS 311.666(2). The court further concludes that taxpayer was not "required" to be absent from the subject property "by reason of health" when the department disqualified the subject property from Senior Property Tax Deferral in January of 2009 and when the department denied taxpayer's application for deferral for the 2009-10 tax year. Finally, even if the court had adopted the interpretation of

the "by reason of health" exception advanced by taxpayer, taxpayer failed to carry the burden of showing that her absence from the subject property was "required *** by reason of" the health of her son. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant properly disqualified Plaintiff from Senior Property Tax Deferral in January of 2009 and properly denied Plaintiff's application for Senior Property Tax Deferral for the 2009-10 tax year.